IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS HOUSTON
DIVISION

|  |  |  |
|---|---|---|
| ELIZABETH GARCIA FLORES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-17-30 |
| | § | |
| NANCY A. BERRYHILL, Acting | § | |
| Commissioner of Social Security | § | |
| Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 11) and Memorandum in Support (Document No. 12), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 13), and Defendant's Motion for Summary Judgment (Document No. 10), and Plaintiff's Reply (Document No. 14). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 10) is DENIED, Plaintiff's Motion for Summary Judgment (Document No. 11) is GRANTED, and the decision of the Commissioner is REMANDED for further proceedings.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on April 4, 2017. (Document No. 9).

## I. Introduction

Plaintiff, Elizabeth Garcia Flores ("Flores") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Flores argues that the Administrative Law Judge ("ALJ"), Patricia J. Henry, committed errors of law when she found Flores was not disabled. Flores argues that the ALJ failed to conduct a function-by-function assessment of Plaintiff's work-related mental limitations and assigned Plaintiff an overly broad, unspecified mental Residual Functional Capacity ("RFC") for "unskilled work." Flores further argues that the ALJ erred by rejecting the uncontroverted examining psychologist opinions. Flores seeks an order remanding her case back to the Social Security Administration, so her impairments and limitations may be evaluated according to the applicable legal standards. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Flores had the RFC to perform light work. Moreover, the Commissioner contends the ALJ properly considered the opinion evidence of the psychologists.

## II. Administrative Proceedings

On December 27, 2012, Flores filed for SSI and DIB claiming she has been disabled since April 12, 2012, due to spinal stenosis of the lumbar spine, morbid obesity, and major depressive disorder. (Tr. 94-96)[2]. The Social Security Administration denied her applications at the initial and reconsideration stages. (Tr. 237, 248). Flores then requested a hearing before an ALJ. (Tr. 252). The Social Security Administration granted her request, and the ALJ held a hearing on November 1, 2013. (Tr. 274-278). On February 6, 2014, the ALJ issued her decision

---

[2] Flores amended her alleged disability onset date to April 12, 2012, at the October 23, 2015, hearing. (Tr. 96).

finding Flores was not disabled and could perform other work in the national economy given her ability to perform light work activity. (Tr. 216, 220).

Flores sought review by the Appeals Council of the ALJ's adverse decision. (Tr. 228). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused her discretion; (2) the ALJ made an error of law in reaching her conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest; or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. After considering Flores' contentions in light of the applicable regulations and evidence, the Appeals Council granted Flores' request and remanded her case for further consideration. *Id.* The Appeals Council directed the ALJ to obtain additional evidence regarding Flores' affective disorder and instructed the ALJ to further consider limitations resulting from her mental impairments and determine what, if any, impact the limitations have on Flores' occupational base. (Tr. 228-29).

The ALJ issued a second unfavorable decision on November 25, 2015, again finding Flores was not disabled. (Tr. 7-24). Flores requested review before the Appeals Council, which was denied on October 14, 2016. (Tr. 1, 360-361). The ALJ's findings and decision, thus, became final.

Flores has timely filed her appeal of the ALJ's decision. The Commissioner has filed a Motion for Summary Judgment (Document No. 10). Likewise, Plaintiff has filed a Motion for Summary Judgment (Document No. 11). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1-1704 (Document No. 5). There is no dispute as to the facts contained therein.

### III. Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits, is only "to [determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, §405 (g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones* at 693; *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no

'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)(quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* §423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

*Id.* §423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)(quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual function capacity, she will be found disabled.

*Id.*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

In the instant action the ALJ determined, in her November 25, 2015, decision that Flores was not disabled at step five. In particular, the ALJ determined that Flores had not engaged in substantial gainful activity since April 12, 2012, alleged onset date (step one); that Flores' degenerative disc disease of the lumbar spine, morbid obesity, status post transient ischemic attack, affective disorder, and generalized anxiety disorder were severe impairments (step two); that Flores did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments (step three); that Flores had the RFC to perform light work with postural limitations and is limited to unskilled work. In particular,

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional postural maneuvers such as kneeling, stooping, crouching, and crawling or climbing stairs and ramps. The claimant must avoid climbing on ladders, ropes, and scaffolds and is limited to unskilled work (i.e. work that needs little or no judgment to do simple duties and that can be learned on the job in a short period of time consistent with 20 CFR 404.1568 and 416.968). (Tr. 18).

The ALJ further found that Flores has no past relevant work (step four); and that based on Flores' RFC, age, limited education, no past relevant work experience, and the testimony of a vocational expert, that Flores could perform work as an office cleaner, a price tagger, and a small products assembler and that Flores was not disabled within the meaning of the Act (step five). As a result the Court must determine whether substantial evidence supports the ALJ's step five finding.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert of opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

**V. Discussion**

**A. Objective Medical Evidence**

The objective medical evidence shows that Flores has been treated for spinal stenosis of the lumbar spine, morbid obesity, and major depressive disorder. The medical records from the relevant period of time, April 2012 through November 2015, show that Flores received medical care at the Mental Health and Mental Retardation Authority of Harris County (MHMRA). (Tr. 613-685, 1288-1363, 1430-1452, 1659-1690). During this time she also received medical care from the Martin Luther King Clinic in Houston, Texas. (Tr. 686-802, 919-1008, 1128-1239,

1376-1429, 1609-1658). She received medical care from the Ben Taub General Hospital. (Tr. 809-908, 1097-1127, 1364-1375, 1597-1608). She received medical care from the MHMRA Southeast Clinic (Tr. 1009-1096, 1453-1583), and from The Smith Clinic. (Tr. 1240-1287).

An initial consult in June 2012 indicated that Flores was diagnosed with depression and difficulty sleeping. (Tr. 613-620). The treatment note indicates that Flores' husband died in July 2009, and multiple deaths occurred in Flores' family in a short period between 2008 and 2009. *Id.* Flores reported previous treatment for depression and anxiety from her primary care physician, but denied any previous psychiatric hospitalizations. (Tr. 618). Flores was referred for psychosocial therapy and counseling (Exhibit B2F-73). In December 2012, Flores seemed to be doing better, but struggled with insomnia. (Tr. 1009-1015). By January 30, 2013, Flores reported taking medications regularly, which she felt helped her insomnia. (Tr. 1020-1022).

On February 23, 2013, Flores attended a consultative psychological evaluation at Ben Taub Hospital. Flores reported she quit working in 2010 due to hysterectomy surgery. (Tr. 803-808). Flores reported depression and anxiety with isolation, loss of enjoyment, lack of motivation, hopelessness, suicidal ideation with no intent or plan, poor memory, lack of concentration, and disrupted sleep. (Tr. 806). In terms of activities of daily living, Flores reported that she tried to clean her home when she had the energy. *Id.* Flores stated she could independently bathe, clean, cook, and manage finances. *Id.* Flores reported she did not maintain intimate relationships. She likewise denied social relationships or having a confidant, but the doctor noted a friend took her to the appointment. *Id.* Flores stated that her symptoms prevented her from timely completing tasks. *Id.* Immediate and long-term memory was not intact according to the physician. *Id.* Flores could not recall three items immediately or after a five-minute interval, and she was unable to name the previous president of the United States. *Id.*

8

However, Flores was able to provide many details about her personal history. (Tr. 807). Although Flores could complete simple arithmetic problems, she could not count backwards from twenty or complete subtraction of serial sevens. *Id.* The doctor noted that this inability suggests her concentration and attention were diminished. *Id.* Flores' global assessment of functioning (GAF) scaled score was 45.[3] (Tr. 809).

September 2013 progress notes indicate Flores was still depressed with multiple somatic and sleep problems. (Tr. 1091). She complained of anxiety. *Id.* The progress notes reveal that Flores was "lethargic" and "slow." *Id.* There was concern Flores was seeking drugs for "sedative hypnotics." (Tr. 1091, 1094). However, by December 2, 2013, Flores reported she was doing well on current medications. (Tr. 1301). She denied current depression, and had symptoms of dysthymia with chronic baseline depression and was less focused on anxiety. *Id.* Mental status examination findings included logical thought process, goal directed associations, thought content absent for hallucinations, suicidal or homicidal ideation, alert sensorium and orientation to person, place, time and situation. *Id.* Immediate recall, recent and remote memory were intact and attention span and concentration were good. Fund of knowledge was appropriate for age and educational level and intellectual functioning was in the average range. (Tr. 1308). Subsequent therapy notes dated January 9, 2014, indicate that Flores was paid weekly by her daughter to take care of her grandson. (Tr. 1579). Progress notes suggest Flores continued to

---

[3] Generally, global assessment of functioning, or GAF scores reflect the clinician's judgment of the individual's overall level of functioning. The GAF scale may be useful in tracking the clinical progress of individuals. GAF scores ranging from 41 to 50 are indicative of serious symptoms or serious impairment in one of the following: Social, occupational or school functioning. A GAF between 51 and 60 is indicative of moderate symptoms or moderate difficulty in one of the following: social, occupational, or school functioning. GAF of 61-70 is indicative of mild symptoms in one area, or difficulty in one of the following: social, occupational, or school functioning, but the person is generally functioning pretty well and has some meaningful interpersonal relationships. *See the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), copyright 2000 American Psychiatric Association.*

care for her grandson through at least mid-July 2014. Flores reported she did not have much time to herself because she cared for her grandson during the week. (Tr. 1322, 1336, 1340, 1350, 1357). Over this period she also reported she had a friend she could confide in, went to stores with her daughter, and visited with her neighbor once a week. (Tr. 1340, 1359). Flores' reported GAF scores during this period were 50. (Tr. 1290).

By October 2014, Flores reported she felt more depressed with poor motivation, poor self-esteem, hopelessness/helplessness, and poor sleep. (Tr. 1435). She stated that she was better at expressing her emotions without shutting down, that she had visited a friend down the road, and at times walked around the flea market on weekends. *Id.* She also reported coping better with grief. (Tr. 1446). Overall, Flores reported that she was doing well. (Tr. 1137-1139). This was apparent at her October 31, 2014 mental status examination. (Tr. 1138). The doctor noted Flores' cooperative attitude, that she had normal motor activity, normal speech, euthymic mood and appropriate affect. *Id.* Her thought process was logical with goal directed associations, absent hallucinations or suicidal ideation, alert sensorium, orientation times four, and intact immediate recall, recent and remote memory. (Tr. 1138, 1139). Her attention span was good with a fund of knowledge appropriate to age, educational level, and average intellectual functioning. (Tr. 1139). Flores had a GAF score of 55 on February 3, 2015. (Tr. 1455).

In May 2015, Flores again reported difficulty sleeping and requested stronger sleep and anxiety medications. (Tr. 1673). By July 31, 2015, she reported her depression was fair and she was sleeping well with no nightmares. (Tr. 1667). The doctor opined that while Flores' anxiety seemed better there were some concerns Flores was specifically seeking Klonopin. *Id.*

Flores attended another consultative psychological evaluation on September 5, 2015. (Tr. 1695). She reported on a typical day she showered, went to eat with her daughter, went to her daughter's house, watched television, and spent time with her grandchildren. (Tr. 1691-1700). She reported being able to prepare small meals, go grocery shopping with her daughter, and perform small chores around the house. *Id.* She reported continued difficulty sleeping. *Id.* Flores also reported feeling more depressed and anxious. She felt she had declined both emotionally and physically over the last six years. *Id.* The consultant noted that Flores' thought processes were goal oriented with no evidence of delusions, or paranoid thinking. (Tr. 1691-1704). Flores continued to report hearing her deceased husband call her name and visions of him in the hospital and after his death. (Tr. 1696). Her remote memory was adequate, recent memory was poor and immediate memory was fair. (Tr. 1691-1704). Flores could not perform serial threes. She could count backwards from twenty, count to one-hundred by fives and recite the alphabet. (Tr. 1697). She scored a full scale IQ of 67 (extremely low range) on the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) and scored the equivalent of the third and fourth grade level on Wide Range Achievement Testing (WRAT-4). (Tr. 1698-1699). Her diagnosis included unspecified neurocognitive disorder, severe major depressive disorder with psychotic features, and generalized anxiety disorder. (Tr. 1699).

Here, substantial evidence supports the ALJ's finding that Flores' degenerative disc disease of the lumbar spine, morbid obesity, status post transient ischemic attack, affective disorder, and generalized anxiety disorder were severe impairments at step two, and that such impairments at step three, individually or in combination, did not meet or equal a listed impairment.

## B. Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. The law is clear that "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton*, 209 F.3d at 455. The ALJ may give little or no weight to a treating source's opinion, however, if good cause is shown. *Id.* at 455-56. The Fifth Circuit in *Newton* described good cause as where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Id.* at 456. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. §404.1527(d)(2)." *Id.* at 453. The six factors that must be considered by the ALJ before giving less than controlling weight to the opinion of a treating source are: (1) the length of treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) the support of the source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the source. 20 C.F.R. § 404.1527(d)(2); *Newton*, 209 F.3d at 456. "The Newton court limited its holding to cases where the ALJ rejects the sole relevant [treating or examining] medical opinion before it." *Qualls v. Astrue*, 339 F. App'x. 461, 467 (5th Cir. 2009); accord *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017). Thus, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth her analysis of the factors when

declining to give controlling weight to a treating physician. *See Qualls,* 339 F. App'x at 466-67; *Kneeland,* 850 F.3d at 760. But, the ALJ must consider all medical opinions, especially conflicting medical opinions. *Kneeland,* 850 F.3d at 759. The ALJ is required to explain why little or no weight is assigned to a medical opinion. *Id.* at 760-761. "[C]ursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion." *Id.* at 761.

Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez,* 64 F.3d at 176. "The ALJ's decision must stand or fall within the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* at 455; *see also Cole v. Barnhart,* 288 F.3d 149, 151 (5th Cir. 2002)("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). However, perfection in administrative proceedings is not required. *See Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988).

With respect to the opinions and diagnoses of treating physicians and medical sources, the ALJ wrote:

> As for the opinion evidence, the claimant's primary care physician at the MLK Clinic completed a medical source statement and lumbar spine residual functional capacity questionnaire on August 1, 2013, indicating that the claimant did not retain the functional ability to perform even the full range of sedentary work (Exhibit B6F). In a report dated April 8, 2013, Dr. Shelley Manning, M.D. was of the opinion that secondary to left leg weakness, chronic back pain, depression, diabetes, and a history of stroke, the claimant could stand and walk for less than two hours in an 8-hour day and sit for 6 hours in an 8-hour day. Dr. Manning also reported that the claimant required two to three unscheduled breaks, used a rolling walker, and could rarely lift and carry less than ten pounds (Exhibit B6F). The undersigned gives this opinion little weight. Subsequent objective medical findings indicated no sustained muscle weakness and normal gait (Exhibits B12F and B14F).
>
> Although the claimant also attended an additional consultative examination in August 2015, the undersigned gives little weight to either the clinical findings or

medical source statement resulting from this examination due to multiple internal inconsistences (Exhibit B18F). The written report indicates full range of motion in the extremities with no crepitation, yet the ranges of motion recorded are not consistent with full range of motion (Exhibits B18F, pp. 3, 5, and 6). Similarly, the claimant's gait was normal, but the medical source statement indicates the claimant required the use of a cane to ambulate (Exhibits B18F-3 and B18F-8).

The state agency medical examiners were of the opinion that the claimant retained the residual functional capacity for light work with occasional postural limitations (Exhibits B3A, B4A, B5A, and B6A). Based on the objective medical findings as detailed above, the undersigned gives these opinions great weight.

The undersigned gives partial weight to the clinical findings of the initial consultative examiner at Exhibit B4F, as the provisional diagnoses were overall consistent with the treating source diagnoses. However, this consultative psychologist did not appear to elaborate further on any functional limitations secondary to these diagnoses. The undersigned notes that the more recent consultative examination included a diagnosis of unspecified neurocognitive disorder (Exhibit B22F-8). However, the undersigned gives this finding little weight. Treating MHMRA records consistently note fund of knowledge appropriate to age and educational level and average intellectual functioning (Exhibits B13F-20 and B16F, pp. 9-11). The consultative examiner indicated that functionally, the claimant could understand, carry out, and remember instructions for simple work, but could not sustain concentration, remember duties and persist in work related activity at a reasonable pace (Exhibit B22F-9). While the undersigned concurs with and therefore gives great weight to the portion of the opinion that the claimant could understand, remember and carry out simple instructions little weight is given to the opinion that the claimant could not sustain even simple work at a reasonable pace. During the same consultative evaluation, the claimant was noted to have adequate persistence even when tasks became difficult on the tests administered (Exhibit B22F-8). Treating source records more consistently note intact memory and good attention span and concentration (Exhibit B13F-20 and B16F, pp. 9-11). (Tr. 21-22).

Here, the thoroughness of the ALJ's decision shows that she carefully considered the medical records and testimony, and that her determination reflects those findings accurately. The ALJ summarized the evidence and set forth specific reasons concerning the weight given to the opinions of the medical sources. The Court concludes that the diagnosis and expert opinion factor also supports the ALJ's decision.

## C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render her disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. §423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment, which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. §423. The regulations provide a two-step process to evaluate a claimant's alleged symptoms. *See* 20 C.F.R. §§404.1529, 416.929.

First, the ALJ must consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms, such as pain. 20 C.F.R. §§404.1529, 416.929. Second, the ALJ evaluates the intensity, persistence of the symptoms, and limiting effects of the symptoms on the claimant's ability to do basic work related activities. *Id.* This evaluation entails the ALJ considering the record, including medical and laboratory findings, the opinions of treating and non-treating medical sources, and other factors relevant to the claimant's symptoms such as daily activities; location, duration, frequency and intensity of pain and other symptoms; and measures taken (such as medication, treatment or home remedies) to alleviate those symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, treatment, other than medication, which the

claimant receives or has received for relief of pain or other symptoms, any measures other than treatment the claimant uses or has used to relieve pain or other symptoms, and any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§404.1529(c), 416.929(c). A claimant's testimony must be consistent with the objective medical evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Farrell v. Bown*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames*, 707 F.2d at 166. Thus, the ALJ's evaluation of the claimant's subjective complaints is entitled to deference if it is supported by substantial evidence. *See Newton*, 209 F.3d at 459.

The undersigned finds that there is nothing in the record to suggest that the ALJ made improper credibility findings, or that she weighed the testimony improperly. Accordingly, this factor also supports the ALJ's decision.

### D. Education, Work History, and Age

The final element to be weighed is the claimant's educational background, work history and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §(d)(2)(A).

The record shows that the ALJ questioned Cheryl Swisher, a vocational expert ("VE"), on October 23, 2015. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995)(quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments, which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling*, 36 F.3d at 436.

The ALJ posed the following comprehensive hypothetical questions to the VE:

Q. All right. Assume a hypothetical individual with this Claimant's age, education, training and work experience who is limited to a light range of work, is limited to occasional postural maneuvers such as kneeling, stooping, crouching, crawling, or climbing stairs or ramps; must avoid climbing on ladders, ropes and scaffolds and he's limited to unskilled work; can such individual perform any of the jobs that this Claimant has performed in the past?

A. No, Your Honor.

Q. Are there jobs in the local and national economy that such hypothetical individual could perform?

A. Yes, Your Honor. The first position is that of an office cleaner, DOT code is 323.687-014. This is a light exertional level position. It is unskilled, SVP 2. There are approximately 6,000 positions in the State of Texas and approximately 200,000 plus positions in the national economy. The second position is that of a price tagger, DOT code of 209.587-034. This is a light exertional level position. It is unskilled, SVP 2. There are approximately 5,000 positions in the State of

Texas and approximately 100,000 positions in the national economy. The third position is that of a small products assembler, DOT code is 706.684-022. This is a light exertional level position. It is unskilled, SVP 2. There are approximately 5,000 plus positions in the State of Texas and approximately 100,000 plus positions in the national economy.

Q. Now, for the second hypothetical is the same as the first, except that the exertional level is changed to sedentary and let me double check – I think this lady has not yet turned 50 – that's correct. Are there jobs available in the local and national economy for such hypothetical individual?

A. Yes, Your Honor. So, looking at the unskilled base, the first position is that of a telephone solicitor. This DOT code is 299.357-014. This is a sedentary exertional level position. It is unskilled, SVP 2. I will note that my testimony varies with the DOT in that the DOT classifies this position as semiskilled, SVP 3. However, based on the both personal and professional experience, this position can be learned and performed competently within 30 days. There are approximately 30,000 positions in the State of Texas and approximately 30,000 plus positions in the national economy. The second position is that of a sorter, DOT code is 521.687-086. This is a sedentary exertional level position. It is unskilled; the SVP 2. There are approximately 1,000 plus positions in the State of Texas and approximately 50,000 positions in the national economy. The third position is that of an order clerk, DOT code is 209.567-014. This is a sedentary exertional level position. It is unskilled, SVP 2. There are approximately 2,000 plus positions in the State of Texas and approximately 100,000 positions in the national economy. (Tr. 107-109).

Flores argues that the ALJ's mental RFC for unskilled work is inconsistent with the ALJ's analysis of the "paragraph B" criteria, and her determination that Flores is "moderately limited in maintaining concentration, persistence." (Tr. 17). Flores further argues that unskilled work is inconsistent with the opinions rendered by two consultative examiners, who both opined that Flores could understand and carry out simple instructions, and whose opinions were given great weight by the ALJ. (Tr. 21). In support of her argument concerning an RFC limited to unskilled work, Flores points to a recent decision by U.S. Magistrate Judge Stephen E. Smith in *Cruz v. Colvin*, Civil No. H-15-3389, 2016 WL 8672925 (S.D.Tex. Dec. 28, 2016), *adopted*, 2017 WL 1274296 (Jan. 27, 2017). Like Flores, the claimant in *Cruz* had an RFC, limiting him to work involving simple one-two-three step routine tasks. Based on this RFC, the ALJ directed

the VE to consider an individual "able to understand, remember and carry out simple instructions, just one to three step tasks that are routine and repetitive without frequent changes in duties ... [and] no contact with the public." There was no mention in the hypothetical of any limitations in the ability to maintain a particular pace over the course of a workday or workweek. The Court, in a thorough and complete analysis of the law, found that limiting a claimant to simple, routine tasks *or unskilled work* fails to take into account a claimant's limitations in concentration, persistence and pace, and found that the ALJ's hypothetical question failed to capture those limitations adequately. The Court wrote:

> The Fifth Circuit has apparently not yet considered a case involving a hypothetical question with precisely these defects-i.e, failing to account for claimant's moderate difficulties with regard to concentration, persistence, and pace-but other circuits have done so, and found reversible error. *See Varga v. Colvin*, 794 F.3d 909, 814 (7th Cir. 2015)("We have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.")(internal quotes omitted); *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)("[A]n ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work' ... [T]he ability to perform simple tasks differs from the ability to stay on task."); *Ramirez v. Barnhard*, 372 F.3d 546, 554 (3rd Cir. 2004)(hypothetical limiting claimant to simple tasks "does not take into account deficiencies in pace," and so Commissioner's decision not based on substantial evidence); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996)(rejecting contention that ALJ accounted for moderate limitations of concentration, persistence, and pace merely by restricting the inquiry to simple, routine tasks).

> Instead of addressing this compelling precedent, the Commissioner's brief resorts to a straw man-the ALJ's assessment of Cruz's mental limitations in concentration, persistence, and pace were presented at steps 2 and 3 of his analysis, rather than step 5. The ALJ's decision does contain the following caveat:

> > The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation

process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.

Tr. 18. This passage merely signifies that, in the case of mental impairments, the residual functional capacity analysis is more refined than the severity analysis; even so, the RFC assessment "reflects" the severity analysis, and so must be consistent with it. Nothing in this passage suggests that the severity analysis is irrelevant to the RFC determination, as the Commissioner's brief implies.

*Cruz*, 2016 WL 8672925 at * 3.

Here, the ALJ posed a hypothetical question based on unskilled work that fails to account for Flores' moderate difficulties with regard to concentration, persistence, and pace. Applying the above analysis, which the undersigned finds persuasive, the Commissioner failed to carry out its burden at step five and the decision is not supported by substantial evidence. As a result the matter must be remanded to receive testimony on whether other work would be available to Flores assuming a correct understanding of her limitations. *See Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001).

**VI. Conclusion**

Based on the foregoing, the ALJ erred by failing to consider all the evidence, and that the ALJ's step five determination is not supported by substantial evidence. As a result further development of the record is necessary. Because substantial evidence does not support the ALJ's decision, the Magistrate Judge ORDERS that the Defendant's Motion for Summary Judgment (Document No. 10), is DENIED, that the Plaintiff's Motion for Summary Judgment (Document No. 11) is GRANTED, and that this case is REMANDED to the Social Security Administration

pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum and Order.

Signed at Houston, Texas, this _7th_ day of _August_ _____, 2017

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE